# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **ADAM EDWARDS** | § | **CIVIL ACTION NO. 5:21-CV-835** |
| *Plaintiff* | § | |
| | § | |
| | § | |
| vs. | § | **ORIGINAL COMPLAINT** |
| | § | |
| **STAT EMERGENCY CENTER, LLC** | § | |
| *Defendant* | § | **JURY TRIAL DEMANDED** |

## PLAINTIFF'S ORIGINAL COMPLAINT

NOW COMES, ADAM EDWARDS, M.D., Plaintiff, (hereinafter "Dr. Edwards"), and files this Original Complaint against STAT EMERGENCY CENTER, LLC (hereinafter "STAT"), and would show as follows:

### I. JURISDICTION & VENUE

1. Plaintiff invokes this Honorable Court's jurisdiction pursuant to 42 U.S.C § 2000e, *et seq*.

2. The unlawful employment practices alleged herein were committed within the San Antonio Division of the Western District of the State of Texas.

### II. PARTIES

3. Plaintiff is a Jewish male American citizen of the United States and at all times relevant was a resident of Bexar County, Texas, in the Western District of Texas. He was employed by the Defendant at all times relevant to the allegations set forth in this

Original Complaint, with regards to his discrimination and hostile work environment claim.

4. Defendant STAT is a corporation that is incorporated under the laws of the State of Texas, with over fifteen employees. Defendant has its principal place of business in the State of Texas. Defendant STAT may be served with process by serving its registered agent, per the Secretary of State's website: Altor, Ltd., 7040 Mapleridge, Houston, Texas 77081.

### III. ADMINISTRATIVE PROCEDURES

5. Plaintiff has complied with and exhausted all administrative remedies prior to filing suit. In particular, Plaintiff timely filed charges of discrimination and received a Right to Sue letter from the EEOC, in connection with the allegations of discrimination and retaliation contained in charge number 451-2021-01603. Upon receiving the Commission's Right to Sue Letter, Dr. Edwards timely instituted his lawsuit based on the same claims. *See* attached hereto and incorporated by reference a true and correct copy of the Right to Sue issued by the EEOC on June 3, 2021, as Exhibit 1.

### IV. CLAIM FOR RELIEF: VIOLATION OF TITLE VII

6. STAT at its core is based on a model of emergency physician operated clinics and most recently a hospital in the Laredo and Eagle Pass markets. Dr. Edwards was at all times relevant and currently is a licensed board certified physician who is both

an employee and B class shareholder of STAT. *See* attached hereto is a true and correct copy of the shareholder's agreement to which DR. EDWARD joined as B class shareholder, as Exhibit 2.  Dr. Padron the perpetrator of most of the alleged discrimination and hostile work environment claims at all times relevant lived and continues to live in San Antonio, Texas.  The adverse actions taken by Dr. Edwards were conceptualized and executed in San Antonio, where Dr. Padron resides.

7. While STAT is presumed to maintain – as it did with the EEOC in its response – that EDWARDS was a mere independent contractor, with no badges or incidents of being an employee, at all times relevant, STAT controlled and dictated Dr. Edwards's schedule, where he worked, under what conditions he was expected to perform his work, how he worked as he was required to comply with all STAT policies and policies with relation to emergency medicine and billing protocols, and provided him with bonuses based on how the clinics where he was assigned in Laredo and Eagle Pass did on collections from insurance providers. Indeed Dr. Padron, the former medical director of STAT Laredo, currently director of Eagle Pass, repeatedly referred to Dr. Edwards and those of his class of physicians performing like services as partner/owners of STAT in internal communications and emails sent to all physicians employed by STAT.

8. Dr. Edwards was the sole Jewish physician employee/shareholder (co-owner) of

STAT at all times relevant. The majority of physicians comprising STAT's body of emergency doctors were of a Hispanic origin. Dr. Sebastian Padron, his reviewing supervisor and medical director, was Hispanic. In sharp contrast with any other physician who was not of Jewish descent, Dr. Edwards was routinely and systematically targeted by Padron, whose actions were known to the board and were ratified, sanctioned, and approved – due to its failure to cure or remedy the continuing pattern of harassment and discriminatory actions.

9.   On information and belief, STAT followed a policy and practice of discrimination against Plaintiff, Dr. Edwards, because of his race as Jewish, in violation of Title VII. The discriminatory practices and policies include, but are not limited to selective and discriminatory placement of the plaintiff in a work schedule where he was required to work back-to-back shifts of 24 hours(when convenient to Padron) or alternatively had to work rotating multiple 24 hour shifts every other day as part of his agreement to work a shift for every share he had as an employee/shareholder of STAT, while other comparator non-jewish physicians were allowed to plan their schedules as they deemed convenient. While Padron accommodated other similarly situated non-Jewish physicians on developing schedules, Dr. Edwards was not extended this benefit. Further the imposition of a schedule where Plaintiff was having to work non-stop such as back-to-back shifts created a health endangerment to Dr. Edwards and endangered possible patient care due

to Padron creating conditions where in some instances he could not sleep for more than 48 hours.

10. Dr. Edwards was further targeted, mocked and disparaged by Dr. Sebastian Padron when Dr. Edward's mother unexpectedly died and under the Jewish tradition, the bodies must be buried within twenty-four hours of their death. Dr. Edwards requested permission to get off his shift such that he could obtain an emergency flight to New York and attend his mother's funeral. Dr. Padron lambasted Edwards for seeking leave to attend the funeral and afterwards was faulted for going and was used as one of the inciting reasons for Dr. Edwards' dismissal as a director at Eagle Pass.

11. Unlike any other physician working at STAT, Dr. Padron targeted and unreasonably demanded and insisted on no less than three occasions that Dr. Edwards submit to psychological testing and evaluation as to his fitness to perform on behalf of the company. Dr. Edwards on each and every occasion that Padron made these requests under a thinly veiled threat of termination, if he refused to submit to the same, conceded to being subjected to these inquests. One such alleged basis for these psychological fitness for duty evaluations was Dr. Edward's consumption of caffeinated beverages and colas while working his 24 hour shifts. On each of the three psychological screenings done, there was no finding of Dr. Edwards being an endangerment to himself, staff or patients whom he would be attending.

12. Despite having one licensed mental health provider conclusively make this finding, Dr. Padron was undeterred in his quest to find grounds to displace and discredit Edwards. Indeed Dr. Edwards has been consistently one of the best rated physicians within the entire practice, through independent reviews posted by former patients of the clinics where Dr. Edwards has served. Here again, Dr. Padron in his efforts to dismantle and deconstruct unsolicited accolades given to Dr. Edwards, has repeatedly under stealth conditions sought to elicit and harvest complaints against Edwards by other co-workers of the clinics by manufacturing and publishing false and defamatory allegations that Edwards allegedly was inappropriate with patients at the clinics. He also expressed to others that Dr. Edwards was suicidal. Although Patron's efforts to tarnish and discredit Edwards have been unfruitful in creating grounds for terminating, as they have never been substantiated by any staff that he has interviewed under such false pretenses, it has caused Edwards to suffer from acute embarrassment, anxiety and fear that anything he does or says will be used against him. It has also caused the overall morale within the clinics where he works to deteriorate by Padron's unsubstantiated infusion of gossip and conjecture.

13. Further, unlike any other physician within the STAT group of emergency doctors, who are not of Jewish descent, Padron completely sidestepped all of the company's controlling bylaws when he unilaterally stripped Edwards of shares that were

assigned to him as a Class B level shareholder, with no authorization, due process or vote from any other board members.  While the STAT board did not actively vote to terminate Edwards or purchase back two shares – that Padron took away from him and correspondingly the pay for two 24 hour shifts along with bonuses based on profits at the Eagle Pass location –  its silence and failure to cure Padron's abusive and unauthorized measure was deafening and confirm that effectively ratified, approved, condoned and sanctioned abusive and unwarranted harassment by Padron against Dr. Edwards.

14. STAT's claim that Dr. Edwards and other similarly situated emergency physicians were independent contractors is a contrivance solely invented by STAT to circumvent and evade paying appropriate payroll taxes by creating a false shell company that acts as a conduit for paying Edwards and other like physicians, as well as to avert possible exposure to liability under employment discrimination, retaliation and harassment acts including but not limited to Title VII.  As stated above, at all times relevant, STAT exercised control over the scheduling of Dr. Edwards, what and how he was perform his job assignment, provided him the equipment that he was required to use in the performance of his duties, and in all relevant aspects treated Dr. Edwards as an employee/co-owner of STAT.  Unlike a typical independent contractor relationship that is defined by project or series of projects, Dr. Edwards has been without fail scheduled to STAT facilities, based on its needs, conditions and convenience.  STAT's attempts to

shield itself from liability under Title VII, by characterizing his as an independent contractor, while dictating the terms and condition of employment as a full fledged employed, covered under the Act are disingenuous.

15. The effect of such practices pursued by the Defendant as alleged above has been and continues to limit, classify, and discriminate against the Plaintiff, Dr. Edwards, in ways which jeopardized his job and ultimately resulted in discriminatory acts, such as Padron's unauthorized grab-back of his class B shares and removal from being scheduled in Eagle Pass causing him to have been deprived and continuing to be deprived of substantial revenues he was entitled to have under the original bylaws and conferring shares to Dr. Edwards. Under the bylaws, each share awarded to Dr. Edwards or other similarly situated non-Jewish physicians corresponded to a twenty four hour shift of work that they were required to perform at a STAT clinic. When Padron stripped him of these share without compensation or compliance with STAT's guidelines on such matters, he effectively deprived and denied Dr. Edwards of compensation he had previously been receiving as the medical director to the Eagle Pass facility. Notably, the location where Padron pulled Dr. Edwards' two shifts related to the Eagle Pass location, which recently converted to a hospital, and where without the consent or approval of Dr. Edwards, STAT continued to use his lab director certification which is required to continue to operate the laboratory services there, for more than a year after he was

removed from any schedules at the facility.[1]

16. Based on information and belief, STAT has not effectively endorsed or ratified other instances of Padron exercising a power grab to take back the shares of any other class B shareholder non-Jewish physician and deprive them of wages they would be entitled based on such actions.  As a further result of STAT's above-stated actions and omissions, the Plaintiff has been and is being deprived of income in the form of wages and other benefits, including but not limited to distributions which STAT has paid other similarly situated physicians and Dr. Edwards based on the financial performance.[2]  As a result, Dr. Edwards had been left dispirited, depressed, anxious and at times paranoid by the malicious and abusive tactics to relegate, classify, discriminate, harass, and torments used by Padron, with a blueprint engineered to break him down and/or cause him to resign from his position. The ongoing mental anguish because of Defendant's discriminatory and hostile environment actions Plaintiff reserves for a jury determine the sum to be proven at trial.

17. Defendant STAT has unlawfully discriminated against the Plaintiff

---

[1] STAT's brazen unauthorized use of Dr. Edwards lab director certification after he was removed from any shifts at that location, showcases the degree of illegality and fraud (including the certification boards with the State of Texas) its board of director effectively endorsed or took a blind eye to, all in name of huge profits.  It also dispells any argument that Dr. Edwards was a mere independent contractor, as an independent contracting physician's lab director license could not be used to establish compliance by STAT with the State of Texas.

[2] Based on lost wages from being stripped of these two shifts, along with distributions made based on the financial performance of the STAT, over the course of even one year, Dr. Edwards damages are likely in excess of $100,000 based on distributions paid historically, when he was still working at the Eagle Pass clinic.

by refusing to offer the Plaintiff a work environment free of prohibited race (Jewish descent) discrimination; failing to remedy discriminatory practices of its supervisory personnel complained of by Plaintiff; and otherwise ratifying a pattern of ongoing abuse and harassment by Padron against the Plaintiff on the basis of his race, as by every other metric of performance he has been repeatedly among the best rated physicians within the STAT group as protected under 42 U.S.C. §2000 *et seq*. Soon after Plaintiff filed his charge of discrimination, STAT mandated Dr. Edwards along with all other physicians to enter into an agreement whereby they would forfeit any rights to challenge or sue STAT and to cement their position as allegedly being only independent contractors – while still dictating the terms and conditions of their work.

18.     Plaintiff further states that the actions and omissions of Defendant, its officers and agents directly and proximately caused him to suffer future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life giving rise to compensatory damages.

19.     Plaintiff further states the knowing, intentional violation of his right to be free of racially targeted harassment and deprivation of procedural remedies as part of his having his shares stripped of him in violation of the company's bylaw and corresponding loss of substantial wages therein, and/or reckless disregard of the same rights, culminating in disparate treatment and his ultimate loss status and rights as shareholder, subject STAT

to punitive damages as may be awarded by a jury in conformity with his rights under the statute.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully moves this Honorable Court to:

1. Grant Plaintiff a permanent injunction enjoining Defendant, its officers, agents, successors, employees, attorneys, and assigns and other representatives, and all those persons acting in concert with them and at their discretion, from engaging in any employment policy and practice which discriminates or has subjected the Plaintiff to a hostile work environment because of the Plaintiff's protected race, Jewish, under 42 U.S.C. Section 2000e *et seq.*

2. Order Defendant to make whole the Plaintiff by providing appropriate back pay and reimbursement for lost wages and distributions in an amount to be shown at trial;

3. Order Defendant to further make whole the Plaintiff by providing his compensatory damages commensurate with the pain, suffering and emotional distress directly caused by the Defendant and its discriminatory employment practices, in an amount as determined at the time of trial;

4. Order Defendant to be charged with exemplary and compensatory damages as a

result of the willful, wanton or in the converse grossly negligent conduct and allegations of its agents, employees and servants giving rise to Plaintiff's emotional distress damages;

5. Order Defendant to be taxed with the cost of this action, including reasonable attorney's fees for Plaintiff, court costs, and expenses.

6. Grant such further and additional relief as to the Court may seem just and proper.

                                                                Respectfully submitted,

*/s/ Russell J. G. Amsberry*
Russell J. G. Amsberry
24165 IH 10 W. Ste. 217, #230
San Antonio, Texas 78257
Telephone: (210) 354.2244
Telecopier: (210) 729-0974
State Bar No. 00790028
Email: r.amsberry@amsberrylaw.com

ATTORNEY FOR PLAINTIFF
Dr. Adam Edwards, M.D.